# UNITED STATES DISTRICT COURT
# FOR THE
# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROY WALKER AND VERDIE | * | NO. |
| BATISTE, INDIVIDUALLY AND O/B/O | * | |
| THEIR DECEASED MINOR CHILD | * | |
| MOXIE WALKER | * | |
| | * | |
| VS | * | |
| | * | |
| WOMAN'S HOSPITAL | * | |
| FOUNDATION D/B/A WOMAN'S | * | |
| HOSPITAL OF BATON ROUGE, | * | |
| DR. CYNTHIA VOELKER, AND DR. | * | |
| NICOLE MITCHELL | * | |

**************************************************************************

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes the Petitioners, Roy Walker (father) and Verdie Batiste (mother), both individually and on behalf of their deceased minor child, Moxie Walker, both persons are of full age and of majority and are domiciled in the Middle District of Louisiana:

1.

Made Defendant(s) herein is:

a) Woman's Hospital Foundation D/B/A WOMAN's Hospital, a Louisiana corporation both domiciled and with a principal place of business within the Middle District of Louisiana;

b) DR. CYNTHIA VOELKER, a health care professional who practices medicine within the Middle District of Louisiana and is employed at WOMAN'S HOSPITAL;

c) DR. NICOLE MITCHELL, a health care professional who practices medicine within the Middle District of Louisiana and is employed at WOMAN'S HOSPITAL;

2.

The United States District Court has jurisdiction over this matter because the cause of action involves a federal question, 42 USC 1395dd et seq. (EMTALA).

3.

The Middle District of Louisiana is the appropriate venue for this matter because the cause of action took place within the Middle District of Louisiana.

**FACTUAL BASIS FOR CAUSE OF ACTION**

4.

Twelve (12) weeks into Ms. Batiste's pregnancy with Moxie, she and Mr. Walker learned that Moxie had a birth defect that affected her lungs.

5.

Babies with Moxie's birth defect tend to have genetic disorders.

6.

After multiple tests throughout her pregnancy, Mr. Walker and Ms. Batiste learned that Moxie' defect was isolated and that she was genetically normal according to her doctors.

7.

During the course of her pregnancy, Ms. Batiste went to see a maternal fetal medical Doctor monthly.  Additionally, she met with both a cardiologist and a neonatologist to ensure that she, Roy, and Woman's Hospital were ready after Moxie was born.

8.

Though Moxie did not have a genetic disorder, due to Moxie's defect, there was the possibility that her lungs would be underdeveloped at birth, thus Ms. Batiste and Mr. Walker discussed with Woman's Hospital a "birth plan" for Moxie.

9.

Part of the "birth plan" included the possibility that Moxie would be born with underdeveloped lungs. If Moxie was born with underdeveloped lungs she would require an **Extracorporeal Membrane Oxygenation (ECMO)** machine.

10.

Ms. Batiste and Mr. Walker inquired if Woman's Hospital had an ECMO machine, and WOMAN's indicated that they did not. However, they told Moxie's parents that Children's Hospital in New Orleans and Ochsner's in Baton Rouge had the ECMO machine.

11.

Additionally, Ms. Batiste and Mr. Walker inquired about her delivering Moxie at Texas Christian Hospital, because Ms. Batiste had family in the area that was willing to help.

12.

The doctors and staff at Woman's Hospital who helped develop Moxie's "birth plan" reassured Mr. Walker and Ms. Batiste that there was no need for Moxie to be delivered anywhere other than Woman's Hospital because there was nothing indicating that she had underdeveloped lungs. Moreover, if she were born with underdeveloped lungs that they would transport her to a facility with an ECMO machine.

13.

Moxie was born on April 22, 2020 and was immediately taken to the NICU at WOMAN's Hospital, which was part of the "birth plan" due to her defect that was discovered when Ms. Batiste was 12 weeks pregnant with Moxie.

14.

Several hours went before Ms. Batiste and Mr. Walker could see Moxie. Doctors and staff at Woman's Hospital indicated that they were "trying to get her ready."

15.

The next morning, Ms. Batiste and Mr. Walker learned that Moxie has pulmonary hypertension.

16.

Ms. Batiste asked when Moxie would be transferred to a facility with an ECMO machine. Dr. Voelker indicated that Children's Hospital would not accept Moxie for an ECMO, because Moxie did not meet the "criteria."

17.

The fact that a "criteria" needed to be met in order for Moxie to be transferred was never discussed with Moxie's parents during her "birth plan."

18.

Ms. Batiste then asked if Moxie can be transported to Texas Children's, and Dr. Voelker told her that she would not be transported to Texas Children's, because her insurance will not cover it.

19.

Dr. Voelker told Ms. Batiste that her insurance would not cover Moxie's transport even though both Ms. Batiste and Mr. Walker have private insurance. Further, prior to giving birth, Ms. Batiste checked with her insurance company to ensure that they would have covered a transfer, because of Moxie's birth defect.

20.

A second neonatologist, Dr. Mitchell told Ms. Batiste that they would look into transferring Moxie to Ochsner, however denied her request to transfer to Texas Children's (who would have accepted Moxie), because Ms. Batiste's insurance did not cover out of state transport (which it did).

21.

Ms. Batiste and Mr. Walker were eventually able to speak with the social worker assigned to the family (she had been assigned since Ms. Batiste was 28 weeks pregnant and had frequently met with the family).  Again, Ms. Batiste asked for a transport to Texas Children's (who does not have the requirements for ECMO that the in-state facilities allegedly have).  The social worker responded that Woman's Hospital would not transfer Moxie to an out of state facility, because "they think you have Medicaid."

22.

Woman's Hospital began trying to get Moxie transferred to Ochsner, however they needed an updated ABG test before accepting her.

23.

Unfortunately, Moxie was never able to be transported to Ochsner or Texas Children's and she died on April 24, 2020.

24.

Based on Moxie's medical records, it appears that she was diagnosed with pulmonary hypertension at 3:00pm on April 22, 2020, less than two (2) hours after birth.  Had she been transported to Texas Children's immediately, she would have had a 93% chance of survival.

25.

However, based on the assumption that Moxie's African-American parents had Medicaid and not private insurance, she was not transported and died as a result.

**FEDERAL CAUSE OF ACTION**

26.

Mr. Walker and Ms. Batiste, individually and behalf of their minor child, Moxie Walker, assert a claim against the Defendants under the 42 USC 1395dd (EMTLA).

27.

The Petitioners allege that Woman's Hospital is considered a "participating hospital" and is thus governed under EMTLA, because they do accept payments from the Department of Health and Human Services for Medicaid and Medicare Services. The Petitioners further allege that Dr. Cynthia Voelker and Dr. Nicole Mitchell were employed (or contracted) with Woman's Hospital at the time of Moxie Walker's intake and were the physicians responsible for refusing Moxie Walker's transfer.

28.

The Petitioners allege that Moxie Walker's condition as described in (but not limited to) the "FACTUAL BASIS" section of this petition qualifies as an "emergency medical condition" under EMTLA.

29.

The Petitioners allege that Defendants the refusal of Moxie Walker's transfer to Texas Children's Hospital and/or Ochsner's Hospital was in direct violation of EMTLA.

30.

The Petitioners allege that the Defendants refusal of Moxie Walker's transfer to any other facility that had an ECMO machine (including Texas Children's and Ochsner) was due the presumption that she was being covered by Medicaid was in direct violation of EMTLA.

31.

The Petitioners allege that Defendants presumption that Moxie Walker was covered by Medicaid and not private insurance was racially motivated, which is in violation of EMTLA.

32.

The Petitioners allege that if Moxie Walker was covered by Medicaid she should have still been transferred to an out of state hospital, which is in violation of EMTLA.

33.

The Petitioners are asking for civil penalties under 42 USC 1395dd (d) for Woman's Hospital, Dr. Voelker, and Dr. Mitchell.

## **RECOVERY UNDER STATE LAW**

34.

If the Petitioners are successful in proving their claims under EMTLA, they are allowed to recover additional damages under state personal injury law (not subjected to or limited to any medical malpractice claim).

35.

The Petitioners assert claims under Louisiana Civil Code Article 2315 due to the Defendants collective and vicarious negligence.

36.

The Petitioners assert that the Defendants are liable for the following (but not limited to) torts under the laws of the State of Louisiana:

a) Wrongful death;

b) Negligence;

c) Gross Negligence;

d) Negligent Infliction of Emotional Distress;

e) Survival Action;

f) Loss of Consortium;

g) Bystander law

37.

The Petitioners seek all compensatory and special damages entitled by law.

38.

The Petitioners seek a trial by jury.

WHEREFORE, the Petitioners, Roy Walker and Verdie Batiste, individually and on behalf of their deceased minor child, Moxie Walker pray that a copy of the above petition is served upon all of the Defendants named herein, and that after all proceedings a judgment is rendered in favor of Petitioners and against Defendants for all relief deemed equitable under the law.

/s/ Ronald S. Haley, Jr.
Ronald S. Haley, Jr. (#30900)
HALEY & ASSOCIATES
ATTORNEYS AT LAW, LLC
8211 Goodwood Blvd Suite E
Baton Rouge, LA 70806
Office: 225-663-8869
Facsimile: 888-900-9771
rhaley@ronaldhaleylawfirm.com